JiKLIEBERT, Chief Judge.
Plaintiff-appellant was injured on January 25, 1991 while working as a boilermaker for Midwest Industrial Company when an air monitor fell approximately 20 feet and struck plaintiff’s upper back midway between his shoulder blades. Plaintiff was paid weekly compensation benefits from January 26, 1991 through May 28, 1991 amounting to $2,745.21. On March 26, 1991, plaintiff filed a worker’s compensation claim demanding additional medical benefits and continuing weekly benefits. After a trial on the merits, the trial court issued a judgment in favor of the defendant and against the plaintiff dismissing the plaintiffs case, finding that the plaintiff failed to prove that he had sustained any permanent physical impairment as a result of the accident of January 25, 1991 and failed to prove any medical condition which required continued medical care. Plaintiff appeals. We affirm.
Although plaintiff was represented at the trial court level by legal counsel, he appears before this Court in proper person. *648 Plaintiffs brief filed with this Court does not specify any alleged errors committed by the trial court and does not contain a specification of the issues presented on appeal. We have, however, reviewed the entire record and will treat plaintiffs appeal as one | gbased on plaintiffs argument that the findings of the trial court were in error.
Our review of the record reveals the following pertinent chronology of the medical treatment received by the plaintiff. After the accident on January 25, 1991, plaintiff was treated at the emergency room of Chal-mette Medical Center where his injury was diagnosed as an injury to his shoulder. He was advised to go home and to return to work on January 28, 1991. He did not return to work. On January 30, 1991 he returned to the hospital and was diagnosed as suffering from right upper thoracic pain syndrome manifesting itself as pain and tenderness. He was sent to therapy for three weeks. On February 25, 1991, he began treatment with Dr. Stewart E. Altman. Dr. Altman felt plaintiff had sustained a contusion of the cervical spine and thoracic spine musculature. Dr. Altman referred plaintiff to Dr. Melvin L. Parnell, Jr., an orthopedic surgeon, who saw plaintiff on June 17, 1991. According to Dr. Parnell, there was no evidence of nerve root entrapment or disc herniation. An MRI scan of plaintiffs thoracic spine taken on July 11, 1991 was entirely within normal limits. Dr. Parnell referred plaintiff to Dr. William J. Johnston, a neurosurgeon, on August 12, 1991. Dr. Johnston ordered an MRI of the plaintiffs cervical spine which showed a moderate disc protrusion to the left of C3-4. Dr. Johnston released plaintiff to return to work, with a diagnosis of a soft tissue injury to his thoracic spine musculature.
The defendant sent plaintiff to see Dr. Robert L. Mímeles, an orthopedist, who ordered a cervical myelogram, followed by a cervical CT scan and nerve conduction studies of the right upper extremity. After Dr. Mímeles examined plaintiff and the diagnostic situation, he concluded that plaintiff had some mild arthritis at C3-4, but nothing to cause the continuing complaints of pain.
Plaintiff obtained a new attorney and plaintiff saw Dr. R.L. Shackleton, an orthopedic surgeon, on September 23,1991. After a review of all reports, Dr. Shackleton suspected that plaintiff might have injured the superscapular nerve on the right side, but 13the nerve conduction studies did not confirm this. Plaintiff then obtained a new attorney. Plaintiff was subsequently examined by Dr. Rudolf Valclav Hamsa, an orthopedic surgeon, on January 15, 1992. After reviewing all of the diagnostic studies performed until that time, Dr. Hamsa was of the opinion that plaintiff had suffered a ruptured disc at C3-C4 with some extrusion, bursitis in the right shoulder and possibly a torn serratas muscle mechanism or trauma to the peripheral nerve. Hamsa referred plaintiff to see Dr. Joseph F. Rauchwerk, another orthopedic surgeon.
Dr. Rauchwerk treated plaintiff with conservative care. His impression was cervical spondylosis with C3-C4 involvement without cord compromise and existing neuroforami-nal stenosis without any evidence of radiculo-pathy. He saw plaintiff on September 29, 1992, and felt claimant had an abnormal disc at C2-C4, and felt a disc excision and a fusion might reheve his pain, with an indication that the disc was not herniated.
Plaintiff saw Dr. Kenneth E. Vogel, an orthopedic surgeon, on April 22, 1993 at the request of Dr. Hamsa. After reviewing his history and performing a physical examination of plaintiff, Dr. Vogel reviewed all diagnostics performed until that time, except for the cervical discogram of March 8,1993. His impression was a herniated cervical disc with cervical instability and possible cervical facet arthropathy.
After consultation with Dr. Rauchwerk, Dr. Parnell ordered a discogram at St. Jude’s Medical Center on March 8, 1993. Dr. Lawrence Glorioso performed the discogram at St. Jude’s and based upon the discogram findings, he could not confirm any surgical disc problem in the cervical spine.
Dr. Parnell, in his report of March 23, 1993, said:
“Based on this discogram as well as the findings at the time of physical examination in my office, I do not feel that he has *649 sustained any permanent physical impairment as a result of his reported accident on January 25, 1991 nor do I feel that he has any abnormality which requires continued medical care.”
The trial court agreed with Dr. Parnell’s assessment of the facts and his conclusions regarding plaintiffs condition.
UThe issue to be resolved by this Court in reviewing this worker’s compensation case is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusions were reasonable ones based upon the evidence presented. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where there exist conflicts in the testimony. Using these standards, our review of the entire record leads us to conclude that the trial court’s findings and conclusions are amply supported by the evidence in this case. We therefore affirm the trial court judgment dismissing the plaintiffs case. All costs of this appeal are taxed to the plaintiff.

AFFIRMED.